IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**AMY COLEMAN, M.D.**                                                 **PLAINTIFF**

**VS.**                          **CAUSE NO.: 3:24-cv-156-DPJ-ASH**

**MERIDIAN IMAGING, P.A.**                                 **DEFENDANT**

**JURY TRIAL DEMANDED**

## COMPLAINT

This is an action to recover actual, triple, punitive, and liquidated damages for violation of the Sherman Act, 15 U.S.C. § 1, and for violation of the Equal Pay Act of 1963. Additionally, Plaintiff sues for violation of state law and state law public policy. The following facts support the action:

1.

Plaintiff AMY COLEMAN, M.D. is an adult resident of 7357 Savannah Drive, Marion, Mississippi 39342.

2.

Defendant MERIDIAN IMAGING, P.A., is a Mississippi corporate entity. Defendant may be served through its registered agent, Stacy Thaggard, at 1400 20th Avenue, Suite C, Meridian, Mississippi 39302-5653.

3.

This Court has federal question jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

4.

Plaintiff Amy Coleman, M.D. began working as an employee of Defendant in 2010 under the Physician Employment Agreement, attached hereto as Exhibit "A." Defendant desired Plaintiff's services because Plaintiff has a fellowship in breast imaging. Defendant needed to improve the quality of its care with respect to breast imaging. Both Defendant and the citizens in the Meridian, Mississippi area needed a breast imaging specialist, such as Plaintiff.

5.

The parties agreed that Plaintiff would work part-time, specializing in breast imaging. The parties agreed that Plaintiff would work two (2) days per week and would be paid $1,600.00 per day for her work, working eight (8) to ten (10) hours per day. However, Plaintiff's services became more and more in demand, and Plaintiff's increasing workload could not be performed by working only two (2) days per week in the eight (8) to ten (10) hours allotted per day. Therefore, the parties agreed that Plaintiff would work three (3) days per week. Even working three (3) days per week, Plaintiff's workload became such that she often had to work more than ten (10) hours per day, the maximum hours specified in the contract. With adding a third day of work in September 2019, Plaintiff's pay remained at the initial 2010 rate of $1,600.00 per day.

6.

Defendant desired to retain Plaintiff in its employment because the demand for Plaintiff's services reaped high profits for Defendant. Plaintiff's services increased the quality of care because of Plaintiff's specialty in breast imaging.

7.

Plaintiff's work resulted in the detection rate of breast cancer diagnoses being significantly

increased, and the overall quality of this section of Defendant's business being improved. Nevertheless, Defendant refused to give Plaintiff the increase in pay that she deserved and also did not make any adjustment for the fact that Plaintiff was often required to work more than ten (10) hours per day, which was contemplated by the Employment Agreement.

8.

In October 2023, Plaintiff finally decided to leave Defendant's employment. Plaintiff made that decision because Plaintiff's pay was much lower than the male physicians' pay and because more and more tasks were added to her schedule, such that her work could not be completed within the maximum ten (10) hour workday as contemplated by the Employment Agreement. The high volume of the work being required of Plaintiff was not consistent with the highest level of patient care. Plaintiff desired to deliver only the highest level of patient care.

9.

Plaintiff's being paid less than what the male radiologists were earning was especially egregious since no one else in Defendant's group has a fellowship in breast imaging, and no one else in the group was able to perform stereotactic/tomographic breast biopsies.

10.

It is strongly in the public interest of the citizens of the Meridian area that Plaintiff be permitted to work for another employer so as to perform her specialty in breast imaging. Without someone in the Meridian area working in the specialty of breast imaging, the quality of healthcare in the Meridian area and detection rate for breast cancer is bound to decline.

11.

Plaintiff's Employment Agreement contains a non-compete agreement, which prohibits

Plaintiff from working in competition with Defendant within a forty-five (45) mile radius of the City of Meridian, Mississippi. Because this non-compete agreement would jeopardize Plaintiff's ability to practice her profession and would diminish the quality of healthcare in the Meridian area, Plaintiff requested that Defendant waive the non-compete agreement.

12.

Defendant refused to waive the non-compete agreement, and, through counsel, informed Plaintiff that it would enforce the non-compete agreement if Plaintiff sought employment within forty-five (45) miles of Meridian.

13.

Other employers have expressed a strong interest in hiring Plaintiff and would have hired her, except for the non-compete agreement. Defendant, however, through its agents, informed other potential employers that it would insist upon enforcing the non-compete agreement, thereby making Plaintiff unable to obtain other employment in the Meridian, Mississippi area.

14.

Further, one potential employer, Baptist Memorial Hospital, Memphis, Tennessee, indicated to Plaintiff that it wished to hire her locally in Meridian and also at a facility outside the forty-five (45) mile radius of Meridian, but was discouraged from doing so by Defendant. Upon information and belief, Plaintiff alleges that Defendant communicated false and derogatory information to Baptist Memorial Hospital in a successful effort to keep Baptist Memorial Hospital from employing Plaintiff. There is no other reasonable explanation why Baptist Memorial Hospital, which had earlier expressed a strong interest in hiring Plaintiff, after talking with Defendant's agent, suddenly decided it would not hire Plaintiff.

15.

The non-compete agreement is contrary to Mississippi public policy of providing the highest standard of medical care. The non-compete agreement, which does not allow Plaintiff to work as a radiologist within a forty-five (45) mile radius of Meridian, means that Mississippi public policy for providing the high level of medical care for patients is not achieved.

16.

Plaintiff, therefore, sues and alleges the following causes of action:

### COUNT I.

### Breach of the Sherman Act

The Sherman Act, 15 U.S.C. § 1, prohibits the enforceability of contracts which are "in restraint of trade or commerce among the several States. . . ." This prohibition on restraints of trade prohibits all "undue" restraints of trade and disallows unreasonable restraints on trade. The non-compete agreement, which Plaintiff was required to enter to obtain employment with Defendant, is an unreasonable restraint on trade because it deprives the citizens in the relevant market (within forty-five (45) miles of Meridian) of a highly qualified radiologist; indeed, it deprives those citizens of a radiologist who is a specialist in breast imaging. The non-compete agreement diminishes competition within the relevant market, which is the market for radiologists within forty-five (45) miles of Meridian, Mississippi; alternatively, in the market for radiologists specializing in breast imaging within forty-five (45) miles of Meridian.

Because the anti-competition agreement restricts competition and tends to allow Defendant to monopolize the radiology services within forty-five (45) miles of Meridian, the non-compete agreement is a *per se* violation of the Sherman Act.

Alternatively, if examined under a "rule of reason" analysis, the non-compete agreement is illegal because it has an actual detrimental affect on competition. Under a rule of reason analysis, the non-compete should be regarded as an unreasonable restraint of trade in violation of the Sherman Act because it deprives the public of needed services of a competitor radiologist and because it deprives the citizens within forty-five (45) miles of Meridian of the services of a radiologist specializing in breast imaging. The non-compete agreement adversely affects the public's interest by diminishing the level of medical care available within forty-five (45) miles of the City of Meridian.

## COUNT II.

### Illegal restraint of trade in violation of Mississippi law

Miss. Code Ann. § 75-21-1(a) prohibits all agreements or contracts which are "inimical to public welfare and the effect of which would be . . . [t]o restrain trade. . . ." Plaintiff's contract restrains trade in the relevant areas of radiology services and radiology services specializing in breast care. This restraint is "inimical to public welfare" since it deprives the public of radiology services within forty-five (45) miles of the City of Meridian and entirely deprives the citizens of Meridian of the services of a specialist in breast imaging within forty-five (45) miles of the City of Meridian. Thus, the non-compete agreement constitutes an agreement in restraint of trade in violation of Miss. Code Ann. § 75-21-1.

## COUNT III.

### Violation of the common law of the State of Mississippi

The common law of the State of Mississippi prohibits unreasonable non-compete agreements. A non-compete agreement is unreasonable when it deprives the public of the services of a skilled

physician, and is especially egregious when it deprives the public of a specialist in breast imaging when such a specialist is needed to increase public safety by increasing the rate of detection of breast cancer. Even if the non-compete agreement were not a violation of the Sherman Act and even if it were not a violation of MISS. CODE ANN. § 75-21-1, the agreement would nevertheless be unlawful under Mississippi common law. While the Mississippi Supreme Court has never squarely faced the issue of whether non-compete agreements among physicians violate public policy, it is self-evident that, under the unique facts of this case, this non-compete agreement violates public policy.

Indeed, our neighboring state, Alabama, so determined over four (4) decades ago in *Odess v. Taylor*, 211 So. 2d 805, 810 (Ala. 1968), where the court noted that non-compete agreements among physicians diminish the public interest by diminishing the availability of qualified physicians.

The non-compete agreement is inconsistent with the Employment Agreement's requirement of assuring continuity of care and tends to encourage patient abandonment, which is prohibited by the fundamental provisions of ethics and by the Employment Agreement, p. 8.

Finally, Defendant's unfair pay practices and its requiring hours which diminish the quality of care amounts to a constructive discharge. Under Mississippi common law, an employer who discharges an employee without cause cannot enforce a non-compete agreement.

## COUNT IV.

### Violation of the Equal Pay Act of 1963

The Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1), prohibits an employer from discriminating with respect to wages "by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex. . . ." Defendant has willfully violated this statute.

For example, Defendant previously employed Dr. Adams Moore, male. During Moore's employment, Defendant paid Moore more than Plaintiff was paid, and paid Moore extra money for interpreting mammograms, a position which Plaintiff had held for years, but for which she was not paid additional compensation. The wage discrimination in favor of Moore and against Plaintiff was willful, entitling Plaintiff to three (3) years of lost wages and an additional amount as liquidated damages.

### COUNT V.

**Intentional interference with future employment in violation of state law**

In additional to interfering with Plaintiff's employment by utilizing the illegal non-compete agreement, Defendant has also intentionally interfered with Plaintiff's employment because, upon information and belief, Defendant has communicated false information to Baptist Memorial Hospital and, possibly, to other potential employers, prohibiting these potential employers from hiring Plaintiff to work as a radiologist even outside the forty-five (45) mile radius contained in the non-compete agreement. These acts constitute the Mississippi law tort of interference with business relations.

Defendant is liable for this tort because: (a) Defendant's actions were intentional and willful; (b) Defendant's actions were calculated to cause Plaintiff damages; (c) Defendant's actions were done for the unlawful purpose of causing Plaintiff damage and loss without right or justifiable excuse; and (d) Plaintiff has suffered actual losses in the form of lost income and mental anxiety and stress.

17.

Defendant's illegal actions have caused Plaintiff lost income.

## REQUEST FOR RELIEF

Plaintiff requests injunctive and declaratory relief declaring the non-compete provision in Plaintiff's Employment Agreement void in violation of the Sherman Act, in violation of state anti-trust law, and in violation of the common law of the State of Mississippi.

Plaintiff further requests actual and triple damages in an amount which she would have earned had Defendant not sought to enforce its illegal non-compete agreement and had Defendant not intentionally interfered with Plaintiff's employment opportunities.

Plaintiff is also entitled to actual and liquidated damages for violation of the Equal Pay Act, and is entitled to actual and triple damages for violation of the Sherman Act. Because of Defendant's enforcement of a non-compete agreement, which it knows or should know is illegal, and because of Defendant's intentional interference in Plaintiff's prospective employment, punitive damages are due.

RESPECTFULLY SUBMITTED, this the 18th day of March, 2024.

AMY COLEMAN, M.D., Plaintiff

By: /s/ JIM WAIDE
Jim Waide, MS Bar No. 6857
waide@waidelaw.com
Rachel Pierce Waide, MS Bar No. 100420
rpierce@waidelaw.com
Yance Falkner, MS Bar No. 106107
yfalkner@waidelaw.com
WAIDE & ASSOCIATES, P.A.
Post Office Box 1357
Tupelo, MS 38802-1357
(662) 842-7324 / Telephone
(662) 842-8056 / Facsimile

ATTORNEYS FOR PLAINTIFF

STATE OF MISSISSIPPI

COUNTY OF _Lauderdale_

PERSONALLY came and appeared before me, the undersigned authority in and for the aforesaid jurisdiction, the within named AMY COLEMAN, M.D., who, after being first duly sworn, states under oath that the facts contained in the above and foregoing COMPLAINT are true and correct as stated therein.

_____
AMY COLEMAN, M.D.

GIVEN under my hand and official seal of office on this the _5_ day of _March_, 2024.

(SEAL)

_____
NOTARY PUBLIC

My Commission Expires: _1/17/2028_